

ALLEN MATKINS LECK GAMBLE
MALLORY & NATSIS LLP
DAVID R. ZARO (BAR NO. 124334)
PETER A. GRIFFIN (BAR NO. 306201)
865 South Figueroa Street, Suite 2800
Los Angeles, California 90017-2543
Phone: (213) 622-5555
Fax: (213) 620-8816
E-Mail: dzaro@allenmatkins.com
pgriffin@allenmatkins.com

ALLEN MATKINS LECK GAMBLE
MALLORY & NATSIS LLP
EDWARD G. FATES (BAR NO. 227809)
One America Plaza
600 West Broadway, 27th Floor
San Diego, California 92101-0903
Phone: (619) 233-1155
Fax: (619) 233-1158
E-Mail: tfates@allenmatkins.com

Attorneys for Plaintiff
THOMAS A. SEAMAN, Court-appointed Receiver

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**SOUTHERN DIVISION**

THOMAS A. SEAMAN, Court-appointed Receiver,

Plaintiff,

v.

NEIL RICHARDSON, individually and as Trustee of the RICHARDSON FAMILY TRUST; ALL PERSONS UNKNOWN, CLAIMING ANY LEGAL OR EQUITABLE RIGHT, TITLE, ESTATE, LIEN, OR INTEREST IN THE PROPERTIES DESCRIBED IN THE COMPLAINT ADVERSE TO THOMAS A. SEAMAN'S TITLE, OR ANY CLOUD ON THOMAS A. SEAMAN'S TITLE THERETO; and DOES 1 through 10,

Defendants.

Case No. 8:18-CV-538

**COMPLAINT FOR**

**(A) FRAUDULENT TRANSFER;**
**(B) QUIET TITLE; AND**
**(C) EQUITABLE SUBORDINATION**

Plaintiff Thomas A. Seaman ("Receiver"), the Court-appointed permanent receiver in the related case in this Court entitled *Securities and Exchange Commission v. Emilio Francisco et al.*, Case No. 16-cv-02257 CJC DFM ("SEC Action"), hereby brings the following Complaint against Defendants Neil Richardson ("Richardson"), individually and as Trustee of the Richardson Family Trust ("Richardson Trust") and against All Persons Unknown, Claiming Any Legal or Equitable Right, Title, Estate, Lien, or Interest in the Properties Described in the Complaint adverse to Thomas A. Seaman's Title, or Any Cloud on Thomas A. Seaman's Title Thereto ("Unknown Defendants"). Defendants Neil Richardson and the Richardson Trust are collectively referred to herein as "Defendants."

The Receiver, on behalf of the Receivership Entities, alleges as follows:

## I. INTRODUCTION

1. Richardson, who worked closely with the principals of the entities in receivership, Emilio Francisco ("Francisco"), Robert Ferrante ("Ferrante"), and Chris Fox ("Fox"), to identify, acquire, and entitle properties for development as senior living facilities, obtained a $2 million promissory note and deed of trust (held in the name of his family trust) via, at best, very unusual circumstances. Richardson had previously worked with FCM Capital Partners ("FCM"), which acquired the property known as the Carmichael Property. FCM also worked with PDC Capital Group, LLC (a Defendant in the SEC Action and one of the entities in receivership, hereinafter "PDC"), so Richardson came to know Francisco, Ferrante and Fox through that relationship. Richardson then got into a dispute with FCM, the two sued each other, and Richardson recorded a *lis pendens* on the Carmichael Property. Richardson, who claimed to be owed $2 million by FCM, then began working directly for PDC. PDC then purchased the Carmichael Property from FCM.

2. However, when it came time for FCM to settle its dispute with Richardson, PDC (who was a stranger to the dispute) agreed to pay Richardson the $2 million allegedly owed by FCM. It is not clear why PDC agreed to pay the

$2 million debt which FCM allegedly owed Richardson. This is not the only mysterious turn in the story though. Instead of PDC or the entity that acquired the Carmichael Property (SAL Carmichael) agreeing to pay Richardson the $2 million, an entirely separate entity that owned an entirely unrelated separate property (SAL Westgate, LLC) agreed to pay the $2.0 million to Richardson and agreed to grant Richardson a security interest in the Westgate Property.

3. SAL Westgate and its EB-5 investors received nothing of value in exchange for the $2 million promissory Note and Deed of Trust. The debt, if it was owed at all, was owed by FCM. No consideration exists for the agreements between PDC, SAL Carmichael, SAL Westgate LLC and Richardson. Accordingly, the Receiver seeks to avoid the Note and Deed of Trust as fraudulent transfers, quiet title to the Westgate Property, and equitably subordinate the claims of Richardson and the Richardson Trust to the claims of the EB-5 investors.

## II. JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction over this matter under 28 U.S.C. section 1345 and 1367(a), and the doctrines of ancillary and supplemental jurisdiction in that this action arises from a common nucleus of operative facts as, and is substantially related to the original claims in the SEC Action. In particular, this action involves (a) real properties purchased with funds raised from investors in the alleged fraudulent scheme that is the subject of the SEC Action and that gave rise to the Receiver's appointment by the Court, and (b) claims asserted by Defendants against the receivership estate. The Receiver sought authority to file this action from the Court in the SEC Action and such authority was granted by order entered on February 26, 2018.

5. Venue in the Central District of California is proper under 28 U.S.C. section 1391 because this action is an ancillary proceeding to the SEC Action and because the Receiver was appointed in this District pursuant to the Preliminary

Injunction Against All Defendants entered in the SEC Action on January 23, 2017 ("PI Order").

## III. PARTIES

6. The Receiver is the duly appointed permanent receiver for PDC Capital Group, LLC; Caffe Primo International, Inc.; SAL Senior Living, LP; SAL Carmichael, LP; SAL Citrus Heights, LP; SAL Kern Canyon, LP; SAL Phoenix, LP; SAL Westgate, LP; Summerplace at Sarasota, LP; Summerplace at Clearwater, LP; Summerplace at Correll Palms, LP; TRC Tucson, LP; Clear Currents West, LP; Caffe Primo Management, LP; Caffe Primo Management 102, LP; Caffe Primo Management 103, LP; Caffe Primo Management 104, LP; Caffe Primo Management 105, LP; Caffe Primo Management 106, LP; Caffe Primo Management 107, LP; Caffe Primo Management 108, LP; and their subsidiaries and affiliates, including, but not limited to, Summerplace Management, LLC; PDC Partners Management, Inc.; and FDC Partners Management, Inc., and their subsidiaries and affiliates (collectively "Receivership Entities"), and was appointed permanent receiver for the Receivership Entities pursuant to the PI Order. Among other things, pursuant to Section IX, the PI Order calls for the Receiver "to conduct such investigation and discovery as may be necessary to locate and account for all assets of or managed by" the Receivership Entities, and "to institute, pursue, and prosecute all claims and causes of action of whatever kind and nature as a result of the activities of present or past employees or agents of" the Receivership Entities and their subsidiaries and affiliates.

7. The Receivership Entities include the named entities listed above and their subsidiaries and affiliates, including, but not limited to, each of the limited liability companies associated with the named limited partnerships, including SAL Westgate, LLC. The majority of the Receivership Entities operated from an office building located within this District at 250 Fischer Avenue, Costa Mesa, California. At all material times, the Receivership Entities' business plan involved

developing and operating assisted living facilities and Caffe Primo restaurants. The Receivership Entities raised money from EB-5 investors ("EB-5 Investors") to support the business plan with the intention that each individual's investment would result in the creation of 10 jobs, which would assist the EB-5 Investors in obtaining permanent residency in the United States.

8. On information and belief, Richardson is a citizen and resident of Orange County, California. Richardson worked for the Receivership Entities during the years 2014 to 2016. On information and belief, Richardson had a business and personal relationship with the Receivership Entities' principals, Emilio Francisco, Robert Ferrante, and Chris Fox.

9. On information and belief, the Richardson Trust is a family trust whose trustee is Richardson.

10. The Unknown Defendants are unknown to the Receiver. These Unknown Defendants, and each of them, claim some right, title, estate, lien, or interest in the hereinafter-described property adverse to the Receiver's title, and their claims, and each of them, constitute a cloud on the Receiver's title to those property.

11. The Receiver is ignorant of the true names and capacities, whether individual, corporate, associate or otherwise, of Does 1 through 10. The Receiver is informed and believes, and based thereon alleges, that each fictitiously named defendant is the recipient of fraudulently transferred funds from the Receivership Entities, or was in some way responsible for, participated in, or contributed to the matters and things of which the Receiver complains herein, and in some fashion, has legal responsibility therefor. When the exact nature and identity of such fictitious defendants' responsibility for, participation in, and contribution to the matters and things herein alleged is ascertained, the Receiver will seek to amend this Complaint and all proceedings herein to set forth the nature of these defendants' identity.

12. The Receiver is informed and believes, and based thereon alleges, that Does 1 through 10, are principals, officers and/or agents of each of the other

Defendants, and directed, ratified, or caused the conduct and/or omissions alleged in this Complaint. The Receiver is further informed, and on that basis alleges, that Does 1 through 10 are the alter egos of the other Defendants and as such are liable for the conduct and damages alleged against the other Defendants herein.

## IV. FACTUAL ALLEGATIONS

### A. The Purported Business of the Receivership Entities

13. On information and belief, PDC made offerings to EB-5 Investors in order to raise money to fund senior assisted living ("SAL") real estate developments and Caffe Primo restaurants. These offerings were primarily made to investors in China that purportedly qualified under the EB-5 Immigrant Investor Program ("EB-5 Program") administered by the U.S. Citizenship and Immigration Services ("USCIS"). Through the use of certain offering materials, including, but not limited to, private placement memorandum (hereafter collectively "PPM(s)"), the Receivership Entities raised approximately $70,000,000 from approximately 140 EB-5 Investors.

14. On information and belief, some of the money raised from the EB-5 Investors was used to purchase land that the defendants named in the SEC Action promised to develop into SAL facilities. Each of the SAL projects was identified in a separate PPM. Each project was to be funded and developed with money raised from the EB-5 Investors investing in that specifically identified project. In accordance with the EB-5 Program, the PPMs indicated that the EB-5 Investors' investments would be used to fund the specific SAL project identified in their PPM.

15. On information and belief, EB-5 Investor funds raised via the PPMs were not used in the manner described in the PPMs. Instead, the EB-5 Investor money was used for projects other than the those identified in the PPMs as well as to fund PDC's business operations and personal lifestyles of Francisco, Ferrante, and Fox. In other words, an EB-5 Investor's money which was, according to the PPM, to be invested in an SAL project in California, was instead used for a project in Florida

or Arizona. As a result, only one of the SAL projects – TRC Tucson – has become operational. Aside from that project, none of the other SAL projects were completed.

16. On information and belief, while many of the SAL projects have had some development work done and are entitled, none of the projects have cash sufficient to proceed with development. Moreover, most of the projects are encumbered with loans which are in default. As a result of this borrowing activity, most of the value or equity of the real properties has been eliminated, leaving EB-5 Investors seeking permanent residency in the United States with little prospect of USCIS approval and significant economic losses.

17. On information and belief, at all times relevant to the below described Richardson transactions, three individuals – Francisco, Ferrante, and Fox – were the principals of the relevant Receivership Entities and indicated to third parties that they represented the interests of the Receivership Entities.

**B. The Richardson Note and Deed of Trust**

18. In or around 2013, Richardson and Chris Miller of FCM were working together to identify properties for development. Richardson claims he loaned significant sums of his personal funds to Miller/FCM. In 2013, FCM purchased a property located in Carmichael, California ("Carmichael Property"). The working relationship between Richardson and Miller soured and the two sued each other (and related entities) in or around 2014. Richardson recorded a *lis pendens* against the Carmichael Property.

19. In 2014, Richardson began working for PDC. In July 2015, Receivership Entity SAL Carmichael, LLC bought the Carmichael Property from FCM for $1.9 million. At the same time, PDC, SAL Carmichael, and Richardson signed a Settlement Agreement by which PDC and SAL Carmichael agreed to pay Richardson $2 million. A promissory note in the amount of $2 million in favor of the Richardson Trust ("Note") was issued, but not by PDC or SAL Carmichael.

Instead, an entirely separate entity, SAL Westgate, LLC, signed the Note, as well as a Deed of Trust securing the obligation to Richardson, which was recorded against the property owned by SAL Westgate ("Westgate Property"). A copy of the Note and Deed of Trust are attached hereto as Exhibit A. SAL Westgate was not involved in the purchase of the Carmichael Property or the Richardson settlement and SAL Westgate received nothing of value from the transaction.

20. In 2016, Richardson had a falling out with PDC. In May 2016, Richardson sued Ferrante, Francisco, PDC, and FDC Capital Group, LLC in Orange County Superior Court. Later that same month, PDC, Francisco and Ferrante filed two separate lawsuits against Richardson, his family trust, his family members, and related entities in Orange County Superior Court. Among other things, Richardson claimed PDC misled him into performing services, but never paid him the agreed upon amounts or commissions for his work. PDC claimed Richardson misrepresented his expertise in real estate development, failed to provide promised services, and then created his own company to compete with PDC, including stealing clients, trade secrets, and business opportunities. The complaints allege that Richardson participated in obtaining a boat and Ferrari automobile, although the two sides dispute who had control of these luxury assets and for whose benefit they were obtained.

**C. The Receivership**

21. On December 29, 2016, the SEC filed its Complaint in the SEC Action, alleging that Francisco and the Receivership Entities violated federal securities laws in the offering and sale of limited partnership interests to the EB-5 Investors. The SEC immediately sought the appointment of the Receiver, which was granted on a temporary basis on January 5, 2017, and on a permanent basis on January 23, 2017, as part of the PI Order.

22. There are approximately 140 EB-5 Investors with claims against the receivership for the substantial losses suffered from their investments in the limited partnerships established by the Defendants in the SEC Action.

**D. <u>SAL Westgate, LLC</u>**

23. SAL Westgate, LLC is a Receivership Entity set up by the Defendants in the SEC Action to hold title to the Westgate Property. The Westgate Property is located in the County of Yolo, City of West Sacramento, California, and is described as follows:

> Parcel B, Parcel Map No. 4733, Jefferson Corners, filed December 13, 2004, in Book 2004 of Maps page 198, Yolo County Records, APN: 046-010-50

24. The Westgate Property was purchased for $1,950,000 in March 2014 by SAL Westgate, LLC. SAL Westgate, LLC is wholly owned by SAL Westgate, LP (also a Receivership Entity). A total of $5,000,000 (not including administrative fees) was raised from EB-5 Investors in connection with the sale of limited partnership interests in SAL Westgate, LP. SAL Westgate, LP has no assets other than its ownership interest in SAL Westgate, LLC, and SAL Westgate, LLC has no assets other than the Westgate Property.

25. In light of the alleged fraud in connection with the sale of limited partnership interests in SAL Westgate, LP, the 10 EB-5 Investors who purchased limited partnership interests in SAL Westgate, LP have claims against SAL Westgate, LP and SAL Westgate, LLC for the return of their $5,000,000 in investment funds. At the time the Note and Deed of Trust were issued, SAL Westgate, LP and SAL Westgate, LLC had no means of satisfying these claims. The only asset of SAL Westgate, LLC was the Westgate Property, which was purchased for $1,950,000. The remaining funds raised from the 10 EB-5 Investors were diverted away from SAL Westgate, LP by the Defendants in the SEC Action and used for other purposes.

26. Accordingly, SAL Westgate, LLC was not only undercapitalized and unable to pay its debts, but was insolvent at the time the Note and Deed of Trust were issued. The Note and Deed of Trust then pushed SAL Westgate, LLC further into insolvency. The Receiver has been forced to use funds from other sources in the receivership estate to pay property taxes and other expenses associated with the Westgate Property in order to preserve and protect its value.

**FIRST CLAIM FOR RELIEF**

**(For Fraudulent Transfer)**

27. The Receiver incorporates herein each and every allegation contained in preceding paragraphs as though fully set forth herein.

28. The Receivership Entities have a right to cancel the Note and Deed of Trust recorded on the Westgate Property.

29. SAL Westgate, LLC, through the Note and Deed of Trust recorded on the Westgate Property, incurred an obligation to the Richardson Trust.

30. The Defendants in the SEC Action, including SAL Westgate, LP transferred the Note and Deed of Trust to the Richardson Trust with the intent to hinder, delay, and defraud the EB-5 Investors and other creditors of SAL Westgate, LP and SAL Westgate, LLC.

31. SAL Westgate, LLC was not a party to Richardson's dealings with FCM or to the settlement among PDC, SAL Carmichael, and Richardson. SAL Westgate, LLC received no value in exchange for the transfer of the Note and Deed of Trust and the associated obligations.

32. At the time the Note and Deed of Trust were issued, SAL Westgate, LLC (a) was in business and planning to enter transactions where its remaining assets were unreasonably small for the business or transactions that it intended to incur, (b) became indebted beyond its ability to pay, and (c) was insolvent or became insolvent shortly after the transfer of the Note and Deed of Trust to the Richardson Trust.

33. As a consequence, the Note and Deed of Trust recorded on the Westgate Property are fraudulent transfers subject to avoidance or cancellation under California's Uniform Voidable Transactions Act, California Civil Code section 3439, *et seq*.

**SECOND CLAIM FOR RELIEF**

**(For Quiet Title – Westgate Property)**

34. The Receiver incorporates herein each and every allegation contained in the preceding paragraphs as though fully set forth herein.

35. As alleged herein, the Westgate Property was purchased with funding from the EB-5 Investors. The Receiver is the permanent equity receiver for SAL Westgate, LLC, the lawful owner in fee of the Westgate Property.

36. Richardson acquired the Note and Deed of Trust in favor of the Richardson Trust in the amount of $2 million.

37. Richardson's claimed interest in the Westgate Property is without merit and Richardson has no legitimate right or interest whatsoever in the subject property. Richardson's claimed interest constitutes a cloud on the Receiver's title to the Westgate Property. The Receiver denies Richardson's claim.

38. The Receiver seeks to quiet title in the Westgate Property, in the name of SAL Westgate, LLC, the lawful owner of the property, free and clear of any claimed right or interest in the properties by Richardson, the Richardson Trust, and the Unknown Defendants. and seeks to quiet title as of the date of the commencement of this action.

**THIRD CLAIM FOR RELIEF**

**(For Equitable Subordination)**

39. The Receiver incorporates herein each and every allegation contained in the preceding paragraphs as though fully set forth herein.

40. As discussed above, the granting of the Note and Deed of Trust on the Westgate Property in favor of Richardson was the result of wrongful activities by

Francisco, Ferrante, Fox, and Richardson, all of whom intended to take advantage of their positions and control over the Receivership Entities in order to benefit Richardson. At the time the Note and Deed of Trust were issued, Richardson had a close business and personal relationship with Francisco, Ferrante and Fox. Richardson took advantage of his insider position by taking the Note and Deed of Trust to the direct detriment of SAL Westgate, LP's EB-5 Investors.

41. As such, the granting of the Note and Deed of Trust on the Westgate Property in favor of the Richardson Trust resulted from Francisco, Ferrante, Fox, and Richardson's inequitable conduct and conferred an unfair advantage on the Richardson Trust to the detriment of the EB-5 Investors.

42. Therefore, the claims of Richardson, both individually and as Trustee of the Richardson Trust, including, but not limited to, his demand for repayment of the Note, should be equitably subordinated to the claims of the EB-5 Investors and other creditors determined to have valid claims against the receivership estate.

## PRAYER FOR RELIEF

WHEREFORE, the Receiver prays for judgment against Richardson, both individually and as Trustee of the Richardson Trust, as follows:

**On the First Cause of Action:**

1. That the Note and Deed of Trust recorded on the Westgate Property be cancelled and/or for a determination that the Note and Deed of Trust are void;

2. For prejudgment interest as allowed by law;

3. For costs of suit herein incurred; and

4. For such other and further relief as the Court may deem just and proper.

**On the Second Cause of Action:**

1. For a judgment that SAL Westgate is the owner in fee of the Westgate Property free and clear of any claimed lien, right or interest in the subject properties by Richardson and the Richardson Trust;

2. That neither Richardson nor the Richardson Trust has any interest in the Westgate Property adverse to SAL Westgate;

3. For costs of suit herein incurred; and

4. For such other and further relief as the Court may deem just and proper.

**<u>On the Third Cause of Action</u>:**

1. For a judgment that the claims of Richardson, individually and as Trustee of the Richardson Trust, including, but not limited to, those associated with the Note and Deed of Trust are equitably subordinated to the claims of the Receiver, the EB-5 Investors, and creditors of the receivership estate;

2. For costs of suit herein incurred; and

3. For such other and further relief as the Court may deem just and proper.

Dated: March 29, 2018

ALLEN MATKINS LECK GAMBLE MALLORY & NATSIS LLP

By: /s/Edward G. Fates
EDWARD G. FATES
Attorneys for Receiver
THOMAS A. SEAMAN